# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**ALLISON ROUSH,**                                                    CIVIL ACTION
**on behalf of real party in interest E.R.**

NO. 21-528-JWD-RLB

**VERSUS**

**DAVID ALEXANDER, ET AL.**

## <u>NOTICE</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on February 24, 2022.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**ALLISON ROUSH,**                                    CIVIL ACTION
**on behalf of real party in interest E.R.**
                                                      NO. 21-528-JWD-RLB
**VERSUS**

**DAVID ALEXANDER, ET AL.**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is Defendants' Motion to Dismiss, Motion to Strike, and Motion for Attorney's Fees. (R. Doc. 14). The motion is opposed. (R. Doc. 20).[1] Defendant filed a Reply. (R. Doc. 23).[2]

Also before the Court is Plaintiff's Motion to Join and Add Parties Defendant ("Motion to Join"). (R. Doc. 13). The motion is opposed. (R. Doc. 15).

Also before the Court is Plaintiff's Motion to Change Status from Pro Se to Sui Juris and Affidavit ("Motion to Change Status"). (R. Doc. 18). The motion is opposed. (R. Doc. 21).

Also before the Court is Plaintiff's Motion for Leave to File Amended Complaint for Declaratory Relief and Other Equitable Relief ("Motion to Amend"). (R. Doc. 22). The motion is opposed. (R. Doc. 24).

## I.      Background

This suit arises out of a challenge to the constitutionality of a mask mandate implemented by the Ascension Parish Board of Education. (R. Doc. 1 ("Complaint"). Plaintiff Allison Roush initiated this action on behalf of her minor child E.R., who was a student at an Ascension Parish

---

[1] Plaintiff filed this document as a "Motion to Dismiss." The Court will treat it as an Opposition.
[2] Defendants filed this document as an "Opposition" to Plaintiff's "Motion to Dismiss." The Court will treat it as a Reply.

public school at the time the lawsuit was filed. (R. Doc. 1 at 2-3).[3] Plaintiff names as defendants: (1) the Ascension Parish Board of Education ("School Board");[4] (2) David Alexander, in his individual capacity and in his official capacity as Superintendent of the Ascension Parish School District; and (3) Taft Kleinpeter, Troy J. Gautreau Sr., Scott Duplechein, Julie Blouin, Marty Bourgeois, John D. Murphy, John DeFrances, Jared Bercegeay, Louis Lambert, and Patricia Russo, all individual elected officials sued in their individual capacity and in their capacity as members of the School Board (collectively, "Defendants"). (R. Doc. 1 at 2-4).

On August 2, 2021, Governor John Bel Edwards issued a state-wide mask mandate in Louisiana. *See* Proclamation Number 137 JBE 2021 (effective August 4, 2021). On August 4, 2021, the School Board enacted a mask mandate for all students, teachers, and faculty:

> **FACE COVERINGS ON SCHOOL PROPERTY (INDOORS OR OUTDOORS):** Pursuant to Proclamation #137 JBE 2021 issued by Governor John Bel Edwards, all individuals shall wear a face covering when indoors on Ascension Public Schools property, as well as on school buses. Individuals are required to wear a mask over the nose and mouth upon entry to any building and remain properly masked while traveling about hallways, corridors, and common spaces inside of the building or in classrooms. Masks are not required when outdoors.

(R. Doc. 1 at 5-6).

On August 9, 2021, Plaintiff notified the School Board and Principal Laurent R. Thomas of her objection to the mask mandate because of E.R.'s health condition. (R. Doc. 1 at 6 (citing Exs. 1-2 of the Complaint, R. Doc. 1-1 at 155-162)). In the emails, Plaintiff states that E.R. suffers from seizures that "can and have been provoked by hyperventilation." (R. Doc. 1-1 at 155). The Complaint does not, however, raise any specific allegations with respect to any disability that E.R may have.

---

[3] The Court refers to Allison Roush as "Plaintiff" in the sense that she is appearing in the lawsuit for the purpose of representing her minor child.

[4] Plaintiff misnames the School Board as "Ascension Middle School District Board of Education." (R. Doc. 1 at 3).

Among other things, Plaintiff alleges that the School Board's mask policy causes immediate and irreparable health risks to students, staff, and the community at large. (R. Doc. 1 at 6). In support, Plaintiff relies on the Affidavit of Stephen E. Petty. (R. Doc. 1 at 6 (citing Ex. O of the Complaint, R. Doc. 1-1 at 1-6)). Mr. Petty is purportedly expert in the field of Industrial Hygiene, who has testified as to the "futility and danger caused by an individual wearing a mask in order to avoid transmitting or becoming infected with Covid-19[.]" (R. Doc. 1 at 6).

Based on the above, Plaintiff filed her Complaint on September 13, 2021. (R. Doc. 1). Plaintiff seeks recovery under both federal and state law:

- Count I – Americans with Disability Act of 2008 – Violation of Subchapter III Subpart B, 36.201(a)
- Count II – Americans with Disability Act of 2008 – Violation of Subchapter III Subpart B, 36.202(a)
- Count III – Violation of Louisiana Constitution Art. 101
- Count [III][5] – Violation of Louisiana R.S. 17:170(E)
- Count IV – Violation of "Federal law stating an individual has the 'right to refuse' any experimental medical intervention under an Emergency Use Authorization

(R. Doc. 1 at 13-14). Plaintiff is seeking a ruling declaring that the mask mandate is void and that Defendants' actions in implementing the mask mandate in violation of the law. (R. Doc. 1 at 15). Plaintiff does not expressly seek any injunctive relief or monetary damages.

On September 24, 2021, the district judge in this action denied a Motion for Temporary Restraining Order brought in a similar action seeking an injunction of the School Board mask mandate, finding that it did not satisfy the any of the four prongs required to obtain a TRO. *Miranda on behalf of M.M. v. Alexander*, No. 21-535, 2021 WL 4352328 (M.D. La. Sept. 24, 2021). First, the district judge held that "Plaintiff's claim fails on the merits because she has not proven a Fourteenth Amendment violation." *Id.* at *4. Second, the district judge further held that

---

[5] The Complaint has two different claims that are both identified as Count III.

Plaintiff had not established a substantial threat of irreparable injury because "(1) she has not shown that her children are suffering or are likely to suffer a real and actual harm; (2) her claim hinges on an affidavit which is not in proper form but, even if considered, (a) is based on data which is vague and non-specific and is not tied to potential harm to Plaintiff's children and (b) relates more to whether masks are effective, rather than the potential consequences of wearing one." *Id.* at *6. Third, the district judge held that "enjoining the School Board's mask policy would potentially cause substantial harm to the Parish's students, teachers, and faculty through community spread of COVID-19, which could potentially cause serious illness and death to them as well as those with whom they come into contact." *Id.* Fourth, the district judge held that "based on the grave risks associated with the ongoing COVID-19 pandemic and the increased risks to the school children of Ascension Parish and the public of granting the injunction, . . . the public interest would not be served by enjoining the mask mandate [, which] would pose an increased risk of quarantines, illness, and long-term learning disruptions." *Id.*

On October 26, 2021, Governor Edwards lifted the requirement for a state-wide mask mandate and allowed local school districts to affirmatively opt out of the public school mask mandate if certain isolation and quarantine policies are adopted. *See* Proclamation Number 203 JBE 2021 (effective October 27, 2021). (*See* R. Doc. 14-4 at 1-3). In light of this proclamation, effective October 27, 2021, face coverings for staff, students, and visitors became optional in Ascension Parish Public Schools, (R. Doc. 11) (*See* R. Doc. 14-4 at 4-5).

On December 6, 2021, Plaintiff filed her Motion to Join, which seeks to name as additional defendants Patricia E. Signorelli, Instruction Supervisor of Title II and Coordinator of Section 504, and Laurent R. Thomas, Principal of Lakeside Primary School as additional defendants. (R. Doc. 13). In this filing, Plaintiff asserts that E.R. is "a 504 student with epilepsy"

and that E.R. was denied an accommodation with respect to the mask mandate despite this disability.

On December 9, 2021, Defendants filed their Motion to Dismiss, Motion to Strike, and Motion for Attorney's Fees. (R. Doc. 14). Defendants seek (1) dismissal under Rule 17(b)(3), and applicable Louisiana procedural law, for lack of procedural capacity to sue on behalf of her minor child while proceeding without counsel, (2) dismissal for lack of Article III standing and mootness; (3) dismissal based on Eleventh Amendment Immunity; (4) dismissal for failure to state a claim; (5) an order striking the Affidavit of Stephen E. Petty from the record; and (6) an award of costs and attorney's fees under 42 U.S.C. § 1988(b).

On January 20, 2022, Plaintiff filed her Motion to Change Status, which appears to seek legal significance in the change of her "pro se" filing status to a "sui juris" filing status. (R. Doc. 18).

On January 26, 2022, Plaintiff filed her Motion to Amend. (R. Doc. 22). Among other things, the proposed pleading seeks to correctly name the Ascension Parish School Board as a defendant, submit a revised Affidavit of Stephen E. Petty, add Laurent Thomas and Patricia E. Signorelli as additional defendants, and seeks to replace the original causes of action with the following causes of action raised solely under federal law:

- Count I – Violation of Title II of the Americans with Disabilities Act 35D, § 35.149
- Count II – Violation of Section 504 of the Rehabilitation Act of 1973
- Count III – Violation of Supremacy Clause of the United States Constitution – Under 42 U.S.C. § 1983
- Count IV – Violation of the Fourteenth Amendment of the United States Constitution – Right to Privacy, Parental Rights, and Right to Bodily Autonomy – Under 42 U.S.C. § 1983
- Count V – Violation of the Fifth and Fourteenth Amendment of the United States Constitution – Right to Due Process – Under 42 U.S.C. § 1983

(R. Doc. 22-3). Of particular note, the proposed pleading alleges that E.R. is a "Section 504 student diagnosed with Nonintractable generalized idiopathic epilepsy without status epilepticus" and has withdrawn from his Ascension Parish public school to attend private school. (R. Doc. 2-3 at 4).

## II.    Law and Analysis

### A.    Standards for *Pro Se* Litigants

As an initial matter, the Court acknowledges that this action, and Plaintiff's pleadings, motions, and briefs, were filed *pro se* (i.e., without the benefit of counsel). Federal courts generally hold *pro se* petitioners to less stringent standards than those required of petitioners represented by counsel. *See Ominski v. Northrop Grumman Shipbuilding, Inc.*, 466 F. App'x 341, 345 (5th Cir. 2012) (affording the plaintiff "the leeway to which she is entitled as a *pro se* petitioner"); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding the allegations of a *pro se* complaint to "less stringent standards than formal pleadings drafted by lawyers"). Nevertheless, "a *pro se* litigant is not exempt . . . from compliance with the relevant rules of procedural and substantive law." *NCO Financial Systems, Inc. v. Harper-Horsley*, No. 07-4247,  2008 WL 2277843, at *3 (E.D. La. May 29, 2008) (citing *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981)).

### B.    Plaintiff's Motion to Change Status

Through this motion, Plaintiff seeks to be recognized as "Allison Roush, Sui Juris, free, Natural Person, All Rights Reserved, and Sovereign Child of God." (R. Doc. 18 at 1).[6] Among

---

[6] Much of the language used in Plaintiff's motion appears reflective of the Sovereign Citizens Movement.. "The sovereign citizens are a loosely affiliated group who believe that the state and federal governments lack constitutional legitimacy and therefore have no authority to regulate their behavior." *Jackson v. Massachusetts*, No. 18-11609, 2018 WL 5017919, at *1 (D. Mass. Oct. 15, 2018) (citing *United States v. Ulloa*, No. 11-5368, 511 Fed. App'x 105, 107, 2013 WL 535776, at n. 1. (2d Cir. 2013); *Gauthier v. Kirkpatrick*, 2013 WL 6407716, at *17 n.18

other things, Plaintiff suggests that she is bound only by her "God-given, secured and guaranteed Rights, pursuant to the Declaration of Independence and the Constitution for the United States of America as ratified in 1791 with the Articles of the Amendments." (R. Doc. 18 at 3). Plaintiff asserts that she is "not a citizen, resident, subject, taxpayer, et al., of the municipal corporations and private corporations doing business in the Parish of Ascension, Prairieville, State of Louisiana . . . ." (R. Doc. 18 at 4). Plaintiff further asserts that the "municipal corporations or private corporations doing business as Parish of Ascension, Louisiana, State of Louisiana or of any other municipal corporation; possess no interest in [her] Private Property, possess no authority to make claims against [her] Private Property, and possess no authority or rights, whatsoever, over [herself], or [her] Private Property." (R. Doc. 18 at 5).

The motion is meritless. There would be no legal significance in holding that Plaintiff can proceed "sui juris" as opposed to "pro se." The terms are not mutually exclusive:

> The term *sui juris* is a Latin term and translates as "of one's own right; independent." In the legal field, *sui juris* is used to signify someone who has reached the age of majority or someone who possesses full civil rights.[7] Pro se is also a Latin term and it translates as "[f]or oneself; on one's own behalf." In the legal field, pro se is used to indicate a litigant who is proceeding without the

---

(D. Vt. Dec. 9, 2013) (noting courts have described sovereign citizen ideology as "completely without merit," "patently frivolous," and "having no conceivable validity in American law") (citations omitted)); *see also United States v. Williams*, No. 419-cr-089, 2020 WL 762540, at *3 (S.D. Ga. Feb. 14, 2020) ("Defendant's filings, to the extent they are comprehensible, bear all of the hallmarks of the 'sovereign citizen' theory that has been consistently rejected by the federal courts as an utterly frivolous attempt to avoid the statutes, rules, and regulations that apply to *all* litigants, regardless of how they portray themselves.") (citing *United States v. Sterling*, 738 F.3d 228, 233 n. 1 (11th Cir. 2013) (noting that courts routinely reject sovereign citizen legal theories as "frivolous") (citing *United States v. Benabe*, 654 F.3d 753, 761-67 (7th Cir. 2011) (recommending that sovereign citizen theories "be rejected summarily, however they are presented")); *Linge v. State of Georgia Inc.*, 569 F. App'x 895, 896 (11th Cir. 2014) (rejecting such theories as "wholly unsubstantial and frivolous"); *Roach v. Arrisi*, No. 15-2547, 2016 WL 8943290 at *2 (M.D. Fla. 2016) (noting that sovereign citizen theories have not only been consistently rejected by the courts, but they have been described as "utterly frivolous," "patently ludicrous," and "a waste of . . . the court's time, which is being paid for by hard-earned tax dollars") (citation omitted); *United States v. Alexio*, No. 13-1018, 2015 WL 4069160 at *3 (D. Hawaii 2015)).

[7] Given Plaintiff's religion-based arguments, Defendants suggest that Plaintiff may be seeking designation as "sui juris" consistent with the "Code of Canons of the Eastern Churches, a set of laws that are independent of state and federal law, which are followed by the Catholic Church, the Roman Catholic Church, and those in communion with it." (R. Doc. 21 at 7). The Court need not speculate on Plaintiff's religious beliefs. It is sufficient to hold that Plaintiff is proceeding "pro se" for the purposes of representing her minor child in this lawsuit regardless of the assertions in Plaintiff's motion with respect to proceeding "sui juris" in the alternative.

> assistance of a lawyer. By their plain meanings, the two terms convey different
> ideas and have no effect on each other.

*Winsey v. Nationstar Mortg. LLC*, No. 17-979, 2017 WL 2931381, at *1 (M.D. Fla. July 10, 2017) (quoting and citing Black's Law Dictionary (10th ed. 2014)). "Federal courts . . . have regarded parties as appearing *pro se* even where the parties have asserted that they are appearing *sui juris* rather than *pro se*." *Hall v. Washington Mut. Bank*, No. 10-01606, 2010 WL 11549664, at *3 (C.D. Cal. July 7, 2010) (citing cases). Courts have repeatedly found no significance in a parties' designation as proceeding "sui juris" as opposed to "pro se." *See*, *e.g.*, *Jackson v. Massachusetts*, No. 18-11609, 2018 WL 5017919, at *1 (D. Mass. Oct. 15, 2018) ("To the degree [the Plaintiff] maintains that he is not a *pro se* litigant but a "sui juris" party, his position is facially deficient. His legal position is erroneously based on a misguided reading of statutes and other authority that are common to claims asserted by sovereign citizen groups.").

Having reviewed Plaintiff's Motion to Change Status, as well as the arguments set forth in Plaintiff's Response to Defendants' Motions (R. Doc. 20), it appears that Plaintiff is primarily seeking a holding that she can represent the interests of her minor child without counsel. The Court will address that issue below. The instant motion is subject to denial because there is no legal basis for granting any "change of status" sought by Plaintiff to proceed "sui juris" as opposed to "pro se."

### C.    Defendants' Motion to Dismiss

#### 1.    Lack of Procedural Capacity

In seeking dismissal of this action, Defendants first argue that Plaintiff lacks procedural capacity under Rule 17(b)(3) to represent her minor child, E.R. Defendants further argue that Plaintiff cannot represent her minor child *pro se* in federal court. (R. Doc. 14-1 at 2-3).

Rule 17 states that the "capacity to sue or be sued shall be determined by the law of the state in which the district is held." Fed. R. Civ. P. 17(b)(3). Under Louisiana law, only "[a] competent major and a competent emancipated minor have the procedural capacity to sue." La. C.C. Proc. Art. 681. As an unemancipated minor, E.R. lacks procedural capacity to maintain this suit under Louisiana law. La. C.C.P. art. 683(A). For an unemancipated minor to bring a lawsuit, "[a]ll persons having parental authority over [the] unemancipated minor must join as proper plaintiffs to sue to enforce a right of the minor, unless a joint custody implementation order otherwise applies. Nevertheless, with permission of the court, any person having parental authority may represent the minor whenever the other person having parental authority fails or refuses to do so." La C.C.P art. 683(B). "When a plaintiff sues as an agent to enforce a right of his principal, or as a legal representative, his authority or qualification is presumed, unless challenged by the defendant by the timely filing of the dilatory exception. When so challenged, the plaintiff shall prove his authority or qualification on the trial of the exception." La. C.C.P. art. 700. Accordingly, Plaintiff (as the sole parental authority suing on behalf of the minor child E.R.) bears the burden of proof to establish sole parental authority to maintain this lawsuit.

In addition, the general rule in federal court is that while parties generally have the right to proceed *pro se* under 28 U.S.C § 1654, a party cannot proceed *pro se* on behalf of another individual, including a spouse or minor children. *Sprague v. Dep't of Fam. & Protective Servs.*, 547 F. App'x 507, 508-09 (5th Cir. 2013) (citing *Johnson v. Lufkin Daily News,* 48 Fed. App'x 917 (5th Cir. 2002) (citing § 1654); *Morgan v. Texas*, 251 Fed. App'x 894, 896 n. 2 (5th Cir. 2007) (noting that because the plaintiff was proceeding *pro se,* she did not have the authority to assert claims on behalf of the minor child); *Aduddle v. Body*, 277 Fed. App'x 459 (5th Cir. 2008) (holding that even assuming the grandfather was the legal guardian of the grandchild, because he

was not an attorney, he did not have the authority to represent her on a *pro se* basis)); *see also Chatman v. Mississippi High Sch. Athletics Ass'n*, 552 F. App'x 335, 337 (5th Cir. 2014) ("[W]ith limited exceptions not applicable here, a pro se, non-lawyer parent or guardian may not represent the interests of her minor child [in a Section 1983 action]."); *JD1 by & through Raskin v. Dallas Indep. Sch. Dist.*, No. 21-2429, 2021 WL 5396001, at *3 (N.D. Tex. Nov. 17, 2021) ("[T]he law does not allow parents like Ms. Raskin to lodge claims and sue pro se on behalf of their children. This is because individuals who do not have a law license may not represent other parties, even minor children, on a next-friend basis.") (citing *Sprague*, 547 F. App'x at 508). An exception to this general rule applies where parents bring an appeal for supplemental security income benefits under Title XVI of the Social Security Act where the parent has a sufficient interest in the case and meets basic standards of competence. *See Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000). That exception is inapplicable to this case.

   Plaintiff does not challenge the law or arguments raised by Defendants.

   Having considered the arguments of the parties, the Court concludes that Plaintiff has not met her burden of proving she has procedural capacity to act as the legal representative on behalf of her minor child under Rule 17(b)(3) and the applicable Louisiana law. Plaintiff has not demonstrated that she has sole parental authority over the minor child to bring this lawsuit or otherwise obtained permission of the Court to proceed as sole parental authority. Even if she had done so, Plaintiff cannot proceed on behalf of her minor child without the benefit of counsel. *See Sprague*, 547 F. App'x at 508-09. Regardless of whether Plaintiff assigns meaning to her request to proceed "sui juris," it nevertheless remains the general rule that parents may not represent their children *pro se* in actions of this nature.

Based on the foregoing, this action is subject to dismissal because Plaintiff lacks procedural capacity to represent her minor child without the benefit of counsel. *See A.R. by & through Roberts v. Kansas Sch. Bd. Ass'n*, No. 21-2492, 2022 WL 103292, at *4 (D. Kan. Jan. 11, 2022) ("[T]he court finds that Plaintiff Roberts has failed to establish standing for any federal claims on her own behalf and, because she is proceeding pro se, she cannot proceed on any federal claims on behalf of her minor children."). Even if Plaintiff could demonstrate that she has procedural capacity to represent her minor child or if an attorney represented the minor child, this action is nevertheless subject to dismissal for the reasons stated below.

### 2.    Subject Matter Jurisdiction

Defendants seek dismissal of this action under Rule 12(b)(1) for lack of subject matter jurisdiction on the basis that federal question jurisdiction under 28 U.S.C. § 1331 is unavailable, any declaratory and injunctive relief sought is moot, and Plaintiff otherwise lacks standing. (R. Doc. 14-1 at 3-14). Defendants further assert that the Court lacks subject matter jurisdiction in light of their immunity under the Eleventh Amendment of the U.S. Constitution. (R. Doc. 14-1 at 14-19).

"Federal courts have limited jurisdiction, and a claim is properly dismissed for lack of subject matter jurisdiction when the court lacks statutory or constitutional power to adjudicate the claim." *Crawford v. U.S. Dep't of Homeland Sec.*, 245 Fed. App'x 369, 374 (5th Cir. 2007) (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). A motion to dismiss filed pursuant to Rule 12(b)(1) "allow[s] a party to challenge the subject matter jurisdiction of the district court to hear a case." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The district court may base its determination as to its subject matter jurisdiction on: "(1) the complaint alone; (2) the complaint supplemented by undisputed

facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* "The burden of establishing subject matter jurisdiction in federal courts rests on the party seeking to invoke it." *St. Paul Reinsurance Co. v. Greenberg,* 134 F.3d 1250, 1253 (5th Cir. 1998). The Court must dismiss an action if at any time it determines it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

### i.    Federal Question Jurisdiction

In the context of opposing Plaintiff's Motion to Change Status, Defendants argue that it is unclear what basis Plaintiff is asserting with respect to this Court's subject matter jurisdiction, given that the parties are not diverse and Plaintiff appears to deny the authority and application of federal law enacted since 1791. (*See* R. Doc. 21 at 5-6).

Plaintiff's Complaint asserts that this Court has subject matter jurisdiction based on 28 U.S.C. § 1131, 28 U.S.C. § 1343(a)(3)-(4), 28 U.S.C. § 1367, 28 U.S.C. § 2201, and 42 U.S.C. § 1983. (R. Doc. 1 at 4). To be clear, Plaintiff does not raise any substantive claim under 42 U.S.C. § 1983 in the original Complaint.[8] Nevertheless, federal question jurisdiction exists under 28 U.S.C. § 1331 "if there appears on the face of the complaint some substantial, disputed question of federal law." *In re Hot–Hed, Inc.*, 477 F.3d 320, 323 (5th Cir. 2007) (quoting *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 366 (5th Cir. 1995)). While Plaintiff raises contradictory positions with the respect to the applicability of federal law, she has nevertheless raised claims under federal law, including the Americans with Disabilities Act ("ADA"). This is sufficient for an exercise of subject matter jurisdiction under 28 U.S.C. § 1331.[9]

---

[8] Accordingly, there is not original jurisdiction under 28 U.S.C. § 1343.

[9] The Declaratory Judgment Act, 28 U.S.C. § 2201, does not provide any independent ground for jurisdiction. *Jones v. Alexander*, 609 F.2d 778, 781 (5th Cir. 1980) ("The Declaratory Judgment Act is not an independent ground for jurisdiction; it permits the award of declaratory relief only when other bases for jurisdiction are present."). The Court will discuss any exercise of supplemental jurisdiction under 28 U.S.C. § 1367 over state law claims below.

### ii.     Eleventh Amendment Immunity

Defendants move the Court to dismiss the action for lack of subject matter jurisdiction on the basis that Plaintiff brings claims against state officials acting in their official capacities that are barred in light of the immunity provided by the Eleventh Amendment to the U.S. Constitution. (R. Doc. 14-1 at 14-19).

The Eleventh Amendment bars a state from being sued in federal court by its own citizens, citizens of other states, or foreign nations. U.S. Const. Amend. XI; *Seminole Tribe v. Florida*, 517 U.S. 44, 54 (1996); *Cox v. City of Dallas*, 256 F.3d 281, 307 (5th Cir. 2001) (citing *Bd. of Trs. Of Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001)). "When a state agency is named the defendant, the Eleventh Amendment bars suits for both money damages and injunctive relief unless the state has waived its immunity." *Cozzo v. Tangipahoa Parish Council--President Government*, 279 F.3d 273, 281 (5th Cir. 2002). "This rule extends to 'arms of the state,' and to a state's 'officials acting in their official capacities.'" *Parker v. Louisiana Dep't of Pub. Safety & Corr.*, No. 18-1030, 2020 WL 4353564, at *8 (M.D. La. July 29, 2020) (citing *Howlett v. Rose*, 496 U.S. 356, 365, (1990); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)) ("Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official, but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.").

The State of Louisiana has not waived its immunity from suit in federal court. *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999) (citing *Quern v. Jordan*, 440 U.S. 332, 345 (1979)); La. R.S. § 13:5106(a). Under the *Ex Parte Young* doctrine, however, "a litigant may sue a state official in his official capacity if the suit seeks prospective relief to redress an ongoing violation of federal law." *Williams on Behalf of J.E. v. Reeves*, 954

13

F.3d 729, 735-36 (5th Cir. 2020) (citing *Ex parte Young*, 209 U.S. 123 (1908)). This exception "rests on a legal fiction, the premise that a state official is not the State for sovereign-immunity purposes when a federal court commands [him or her] to do nothing more than refrain from violating federal law." *Id.* at 168. (citations omitted). For a suit to proceed under this doctrine, it must be a suit seeking declaratory or injunctive relief and: "(1) be brought against state officers who are acting in their official capacities; (2) seek prospective relief to redress ongoing conduct; and (3) allege a violation of federal, not state, law." *Id.* (citing *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015). This is true, even where an injunction may have "an ancillary effect on the state treasury." *Quern v. Jordan*, 440 U.S. 332, 337 (1979).

The burden of proof in demonstrating that the School Board, and its members, are an "arm of the State of Louisiana" falls on the Defendants. *Skelton v. Camp*, 234 F.3d 292, 297 (5th Cir. 2000). Defendants assert, with no legal citation, that there is no dispute that the School Board is an "arm of the State of Louisiana," and, therefore, entitled to assert Eleventh Amendment Immunity. (R. Doc. 19-1 at 18; R. Doc. 24 at 4). The Fifth Circuit has held, however, that a Parish of the State of Louisiana is not an "arm" of the State of Louisiana. *United Disaster Response, LLC v. Omni Pinnacle, LLC*, 511 F.3d 476, 478-480 (5th Cir. 2007). More specifically, the Fifth Circuit has expressly held that a "parish school board" is not an "arm" of the State within the meaning of the Eleventh Amendment. *Minton v. St. Bernard Par. Sch. Bd.*, 803 F.2d 129, 132 (5th Cir. 1986) ("Louisiana school boards . . . are not entitled to eleventh amendment immunity."); *see Sch. Bd. of Par. of St. Charles v. Roxco, Ltd.*, No. 01-0359, 2001 WL 283094, at *1 (E.D. La. Mar. 21, 2001) ("[T]he School Board of the Parish of St. Charles . . . is not entitled to Eleventh Amendment immunity in the present action because it is not an arm of

the State of Louisiana."). Accordingly, Defendants have not demonstrated that they are entitled to Eleventh Amendment immunity.

Defendants also argue that they have immunity from civil liability in light of certain restrictions enacted by the Louisiana legislature with respect to statements made by school employees while in the course and scope their employment or regarding any injuries related to the COVID-19 pandemic. (R. Doc. 14-1 at 18-19) (citing La. R.S. 17:439(A) ("Except as otherwise provided in this Section, no person shall have a cause of action against any school employee based on any statement made or action taken by the school employee provided that the action or statement was within the course and scope of the school employee's duties as defined by the school board in which the school employee is employed and was within the specific guidelines for school employee behavior as established by that school board."); La R.S. 17:439.1(A) ("Notwithstanding any other provision of law to the contrary, public and nonpublic schools, public and nonpublic school systems, public and nonpublic school governing authorities, and charter school governing authorities, and the officers, employees, and agents thereof shall not be held liable for any civil damages for injury or death resulting from or related to actual or alleged exposure to COVID-19 or acts undertaken in the effort to respond or adapt to the COVID-19 public health emergency.")). These Louisiana statutes do not provide immunity from civil lawsuits in federal court as a matter of the Court's subject matter jurisdiction. At most, these statutes provide immunity from certain civil actions brought under state law, but not any claims raised under federal law. *See* U.S. Const. art. VI, cl. 2 ("This Constitution, and the Laws

of the United States which shall be made in Pursuance thereof . . . ., shall be the supreme Law of the Land. . . .").[10]

Given the foregoing, Defendants have not demonstrated that they are entitled to Eleventh Amendment Immunity. The Court will, therefore, determine whether an exercise of subject matter jurisdiction is proper in light of Defendants' arguments regarding Article III standing and mootness.

### iii.    Standing and Mootness

Article III of the United States Constitution extends the judicial power of the United States to actual "cases" and "controversies." U.S. Const. art. III, § 2; *see Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). "The justiciability doctrines of standing, mootness, political question, and ripeness 'all originate in Article III's "case" or "controversy" language.' *Choice Inc. of Texas v. Greenstein*, 691 F.3d at 715 (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)).

To have Article III standing, the Plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant (causation), and (3) that is likely to be redressed by a favorable judicial decision. *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Friends of the Earth, Inc. v. Laidlaw Environ. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)). The plaintiff who files a complaint in federal court, as the party invoking federal jurisdiction, bears the burden of establishing these elements. *Id.* (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)). In order to satisfy this burden at the pleading stage the plaintiff must clearly allege facts to satisfy each element of Article III standing. *Id.* (quoting *Warth*, 422 U.S. at

---

[10] As discussed below, the Court finds that Plaintiff has not stated a federal claim for which relief can be granted. The Court takes no position on whether La R.S. 17:439 or La R.S. 17:439 bar civil liability with respect to Plaintiff's claims raised under state law.

518). Moreover, the plaintiff must demonstrate standing separately for each form of relief that he seeks. *Friends of the Earth*, 528 U.S. at 185 (citing *Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983)). When a party cannot establish the standing requirements imposed by Article III, courts lack subject matter jurisdiction over the case. *Bell v. American Traffic Solutions, Inc*., 371 Fed. App'x 488, 489 (5th Cir. 2010); *Cadle Co. v. Neubauer*, 562 F.3d 369, 371 (5th Cir. 2009).

Plaintiff's arguments in support of a finding of standing suggest that Defendants have "failed to prove" various issues, including the scientific and social values of mask wearing. (R. Doc. 20 at 3). These arguments have no bearing on whether Plaintiff has Article III standing or whether the claims raised in the pleading are moot. Nevertheless, the alleged injury in fact is the deprivation of the minor child's rights under federal law by requiring the child to wear a mask while attending public school.[11] This alleged injury in fact can be fairly traceable to the School Board in issuing a mask mandate requiring public school children to wear masks in the school setting. A favorable judicial decision declaring the mask mandate void and enjoining the enforcement of the mask mandate would redress the alleged violation. That Courts have found that mask mandates do not violate certain federal rights goes to the merits of Plaintiff's claims, not whether Plaintiff has standing to raise such claims on behalf of her minor child.[12]

---

[11] However, in the context of addressing whether plaintiffs had standing to challenge a Texas state law prohibiting local governmental entities from imposing mask mandates, the Fifth Circuit concluded that the plaintiffs likely failed to show that the enforcement of the statute resulted in an injury in fact. *E.T. v. Paxton*, 19 F.4th 760, 766 (5th Cir. 2021) ("The risks of contracting COVID-19 for these plaintiffs are certainly real, but the alleged injury to plaintiffs *from the enforcement of GA-38* is, at this point, much more abstract. This is so because the binary choice envisioned by the district court—either stay home or catch COVID-19—is a false one: it wholly elides the various accommodations available to the plaintiffs (e.g., distancing, voluntary masking, class spacing, plexiglass, and vaccinations) to ensure a safer learning environment, regardless of GA-38's prohibition of local mask mandates. Beyond whether plaintiffs allege a 'concrete' injury, they also likely fail to show any actual or imminent injury as a result of the enforcement of GA-38.").

[12] To the extent Plaintiff seeks relief on her own behalf, however, it would be proper to find that Plaintiff lacks standing. Plaintiff "does not allege that the policy has mandated that she wear a mask for any particular time" and, accordingly, has not suffered any "concrete and particularized injury" to form the basis of an Article III injury in fact. *See Roberts*, 2022 WL 103292, at *4.

The Court will turn to whether the declaratory relief (and any injunctive relief) sought in this action is moot given that the mask mandate was lifted effective October 27, 2021. "It is well-settled, that mootness is a threshold jurisdictional inquiry." *Louisiana Environmental Action Network [LEAN] v. U.S. E.P.A.*, 382 F.3d 575, 580-81 (5th Cir. 2004) (citing *Deakins v. Monaghan,* 484 U.S. 193, 199 (1988) ("Article III of the Constitution limits federal courts to the adjudication of actual, ongoing controversies between litigants."). "In general, a claim becomes moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *LEAN*, 382 at 581 (citing *Murphy v. Hunt,* 455 U.S. 478, 481 (1982) (per curiam); *Piggly Wiggly Clarksville v. Mrs. Baird's Bakeries,* 177 F.3d 380, 383 (5th Cir. 1999). "If a dispute has been resolved, or if it has evanesced because of changed circumstances, it is considered moot." *LEAN*, 382 at 581 (citing *American Medical Assoc. v. Bowen,* 857 F.2d 267 (5th Cir. 1988)). In certain circumstances, there is "an exception to the general principle of mootness in instances where some issues of a case have become moot "but the case as a whole remains alive because other issues have not become moot." *LEAN*, 382 at 581 (quoting *ITT Rayonier, Inc. v. United States,* 651 F.2d 343, 345 (5th Cir. 1981)).

Several courts have held that the lifting of a mask mandate renders an action challenging the mask mandate moot because the action is no longer premised upon an actual case or controversy recognized under Article III of the U.S. Constitution. *See*, *e.g.*, *Zinman v. Nova Se. Univ., Inc.*, No. 21-60723, 2021 WL 4025722, at *9-11 (S.D. Fla. Aug. 30, 2021) (constitutional challenge of Palm Beach's mask mandate became moot, to the extent the plaintiff sought declaratory and injunctive relief, upon the issuance of Governor's Executive Order precluding municipalities from enacting such ordinances), *report and recommendation adopted sub nom. Zinman v. Nova Se. Univ.*, 2021 WL 4226028 (S.D. Fla. Sept. 15, 2021); *Kelly v. Imagineif Libr.*

*Entity*, No. 21-6, 2021 WL 2444663, at *2-3 (D. Mont. June 15, 2021) (plaintiff's claims

challenging statewide mask mandate and seeking declaratory and injunctive relief were moot

where Governor lifted statewide mask mandate one month after the filing of the lawsuit).

The Court recognizes that a defendant's "voluntary cessation of challenged conduct does

not ordinarily render a case moot." *Knox v. Serv. Emp. Int'l Union, Local 1000*, 567 U.S. 298,

307 (2012); *see Sossamon v. Lone Star State of Texas,* 560 F.3d 316, 324 (5th Cir. 2009), *aff'd*

*sub nom. Sossamon v. Texas*, 563 U.S. 277 (2011). A case can nevertheless be rendered moot if

"(1) it can be said with assurance that there is no reasonable expectation . . . that the alleged

violation will recur, and (2) any interim relief or events have completely and irrevocably

eradicated the effects of the alleged violation." *County of Los Angeles v. Davis*, 440 U.S. 625,

631 (1979) (quotation omitted). Here, there is arguably no reasonable expectation that the School

Board will reinstate a public school mask mandate given that Governor Edwards has lifted the

requirement for a state-wide mask mandate and has allowed local school districts to affirmatively

opt out of the public school mask mandate if certain isolation and quarantine policies are

adopted. *See* Proclamation Number 203 JBE 2021 (effective October 27, 2021). (*See* R. Doc. 19-

4 at 1-3). The lifting of the mask mandate in Ascension Parish public schools in light of this

proclamation arguably constitutes an interim event that has "completely and irrevocably

eradicated the effects" of Plaintiff's alleged constitutional violations. (*See* R. Doc. 19-4 at 4-5).

That said, the Court further recognizes that the U.S. Supreme Court has addressed

mootness in the context of COVID-19 restrictions, finding that the lifting of pandemic orders

does not necessarily render the relief sought as moot. *See Roman Catholic Diocese of Brooklyn*

*v. Cuomo*, --- U.S. ---, 141 S. Ct. 63, 68–69 (2020) (plaintiffs' challenge to a state COVID-19

pandemic order limiting attendance at religious services was not moot where the state had

relaxed the attendance limitations in response to declining COVID-19 cases because the plaintiffs "remain under a constant threat" that the state will reimpose the attendance limits without notice and "bar individuals in the affected area from attending services before judicial relief can be obtained"); *Tandon v. Newsom*, --- U.S. ---, 141 S. Ct. 1294, 1297 (2020) (plaintiffs' challenge to a state COVID-19 pandemic order limiting gatherings, including gatherings for at-home religious activities, was not moot even though the defendants modified the guidance in the course of the litigation); *but see Spell v. Edwards*, No. 20-00282, 2022 WL 131249, at *1 (M.D. La. Jan. 12, 2022) ("The Supreme Court's most recent jurisprudence cannot save Plaintiffs' claims for injunctive relief because the challenged restrictions have expired on their own terms and there is no indication whatsoever that crowd-size limits on indoor assembly will be reinstated.").

Given the ever-evolving government responses to the current pandemic, as well as the decisions by the Supreme Court, this action presents an ongoing "case or controversy" under Article III. The Court will address the merits of Plaintiff's federal claims below.[13]

### 3.    Failure to State a Claim

### i.    Legal Standards for Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a Rule 12(b)(6) motion, a pleading's language, on its face, must demonstrate that there exists plausibility for

---

[13] Given that Plaintiff seeks to allege that E.R. has withdrawn from public school, it appears that Plaintiff's proposed claims in the Motion to Amend are moot to the extent Plaintiff seeks injunctive and declaratory relief. *See Van Alstyne Indep. Sch. Dist. v. Andre S.*, No. 09-89, 2010 WL 715560, at *6 (E.D. Tex. Feb. 23, 2010) (The IDEA claims of a disabled student's parents against a school district were moot after the student withdrew from the school).

entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In determining whether it is plausible that a pleader is entitled to relief, a court does not assume the truth of conclusory statements, but rather looks for facts which support the elements of the pleader's claim. *Twombly*, 550 U.S. at 557. Factual assertions are presumed to be true, but "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" alone are not enough to withstand a 12(b)(6) motion. *Iqbal*, 556 U.S. at 678.

In most circumstances, a court should allow a plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) (plaintiffs are generally given one chance to amend before dismissal unless "it is clear that the defects are incurable"). However, a court should deny leave to submit futile amendments that are "insufficient to state a claim." *Jamieson v Shaw*, 772 F.2d 1205, 1209 (5th Cir. 1985).

Having considered the pleadings as a whole and the arguments of the parties, the Court concludes that Plaintiff has failed to allege a claim under federal law. The Court further concludes that any further amendment would be futile with respect to the federal claims already alleged.

### ii.    ADA Claims

Counts I and II purport to raise claims under the Americans with Disabilities Act of 2008 ("ADA"). (R. Doc. 1 at 13). Plaintiff merely quotes language from ADA regulations prohibiting discrimination, or denial of participation, on the basis of disability at a place of public accommodation. *See* 28 CFR § 36.201(a), 28 CFR § 36.202(a).

It appears that Plaintiff is alleging a claim under Title III of the ADA, which provides, in pertinent part, that: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns . . . or operates a place of public accommodation." 42 U.S.C. § 12182(a). "To state a claim under Title III of the ADA a plaintiff must show: (1) that he is disabled as defined by the ADA, 42 U.S.C. § 12102(2); (2) that the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) that the defendant discriminated against the plaintiff because of the plaintiff's disability." *Mosley v. Midas Worthington, LLC*, No. 19-75, 2020 WL 113350, at *8 (M.D. La. Jan. 9, 2020) (citing 42 U.S.C. § 12182(a); *Smith v. Bastrop Med. Clinic, P.A., Inc.*, No. 11-330, 2011 WL 3844223, at *4 (W.D. Tex. Aug. 29, 2011), *subsequently aff'd sub nom. Smith v. Bastrop Med. Clinic, P.A.*, 465 F. App'x 389 (5th Cir. 2012)).

Given that the School Board is a public entity, Plaintiff cannot state a claim for relief under Title III of the ADA. The Court will, therefore, assume that Plaintiff is attempting to raise a claim under Title II of the ADA, which pertains to public entities. "A plaintiff states a claim for relief under Title II if he alleges: (1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability." *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011); *see* 42 U.S.C. § 12132.

In her Motion to Amend, Plaintiff seeks to abandon the claims under Title III to specifically allege claims under Title II of the ADA and to raise allegations under the Section 504 of the Rehabilitation Act. Accordingly, the Court finds it appropriate to dismiss the

foregoing claims under Title III of the ADA, and address whether amendment should be allowed below.

### iii.    The EUA Statute

Count IV of the Complaint asserts the following claim: "Violation of Federal law stating an individual has the 'right to refuse' any experimental medical intervention under an Emergency Use Authorization" (R. Doc. 1 at 14). Plaintiff does not allege any operative facts with respect to this allegation. The only further allegation Plaintiff makes is the following: "Authorization for Medical Products for Use in Emergencies USC § 360bbb-3.e.1.A Masks and face coverings are recommended through an Emergency Use Authorization according to the FDA." (R. Doc. 1 at 14).

It appears that Plaintiff is seeking to allege a private cause of action pursuant to the federal Emergency Use Authorization ("EUA") statute, 21 U.S.C. 360bbb-3. "Section 360bbb-3 establishes the statutory framework for emergency authorization of products (including drugs, devices, and biological products) by the Secretary of Health and Human Services." *Dustin Llloyd v. School Board of Palm Beach County*, No. 21-81715, 2021 WL 5353879, at *4 (S.D. Fla. Oct. 29, 2021). In pertinent part, the statute provides that "[w]ith respect to the emergency use of an unapproved product, the Secretary, to the extent practicable . . . shall . . . establish . . . [a]ppropriate conditions designed to ensure that individuals to whom the product is administered are informed . . . of the option to accept or refuse administration of the product, of the consequences, if any, of refusing administration of the product, and of the alternatives to the product that are available and of their benefits and risks." 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(III).

Plaintiff does not allege that her minor child was required to wear a mask that fell under an EUA issued by the Secretary of Health and Human Services. At any rate, Plaintiff has no

private right of action for a claim under Title 21. *See* 21 U.S.C. § 337(a) (with certain exceptions applicable to the states, "all . . . proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States."); *Navy Seal 1 v. Biden*, No. 21-2429, 2021 WL 5448970, at *3 (M.D. Fla. Nov. 22, 2021) (the statutory "option to accept or refuse" an emergency vaccine found in 21 U.S.C. § 360bbb-3(e)(1)(A) confers no private right of action).

Plaintiff has failed to state a claim under the EUA statute.

### iv.    The Remaining State Law Claims

The Court may decline to exercise supplemental jurisdiction over Plaintiff's remaining two state law claims (each identified as Count III). Where the Court has original jurisdiction, it may generally exercise "supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the same cause or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The Court may decline to exercise supplemental jurisdiction, however, under Section 1367(c), which provides:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). Given that all of Plaintiff's federal claims are subject to dismissal, the Court can properly exercise its discretion in declining supplemental jurisdiction over all remaining state law claims.[14] *See Raskin*, 2021 WL 5396001, at *4 (declining exercise of supplemental jurisdiction where the state claims involved "novel issues of state law and policy related to COVID-19").

---

[14] Plaintiff's proposed Amended Complaint does not raise any state law claims.

### D.    Defendants' Motion to Strike Affidavit

Defendant seeks dismissal of the Affidavit of Stephen E. Petty, as well as portions of the Complaint that cite and quote the Affidavit, because these statements are "irrelevant, unauthenticated, hearsay opinions of the unadmitted expert, as these are not proper pleadings or admissible, material evidence for the record." (R. Doc. 19-1 at 24).

The Court has found it proper to dismiss all of Plaintiff's claims without addressing the assertions made by Mr. Petty in his Affidavit. Accordingly, this relief is properly denied as moot.

### E.    Attorney's Fees

While Plaintiff has raised a claim for attorney's fees, she does not state the source of law from which such fees are awardable. Defendants assert that they should be awarded reasonable attorney's fees as costs because they are the "prevailing party" with respect to Plaintiff's Section 1983 action. Section 1988 provides that in "any action or proceeding to enforce a provision" of Section 1983 "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b).

Plaintiff's original Complaint does has not raise a claim under 28 U.S.C. § 1983. Accordingly, an award of attorney's fees to Defendant pursuant to Section 1988 is not available.

### F.    Plaintiff's Motion to Join

Plaintiff seeks to add Patricia E. Signorelli and Laurent R. Thomas as additional defendants to the original Complaint. (R. Doc. 13). As discussed above, the claims raised in the original Complaint are subject to dismissal and would be subject to dismissal even with the addition of these defendants. Accordingly, the instant Motion to Join is subject to denial. Plaintiff is seeking to name these individuals as defendants in the context of her Motion to

Amend. Given that the Court finds the proposed amended claims to be futile, it would likewise be futile to name these individuals as additional defendants.

### G.    Plaintiff's Motion to Amend

#### 1.    Legal Standards

Under Rule 15(a)(2), after the period for amending as a matter of course elapses, "a party may amend its pleading only with the opposing party's written consent or the court's leave" and a "court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).[15] The rule "evinces a bias in favor of granting leave to amend." *Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S.A. Co.*, 195 F.3d 765, 770 (5th Cir. 1999) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (5th Cir. 1981)). Although leave to amend should not be automatically granted, "[a] district court must possess a substantial reason to deny a request for leave to amend[.]" *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (quotations omitted). The Court may consider several factors when determining whether to grant leave to amend, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment. . . ." *See Rhodes v. Amarillo Hosp. Dist.*, 654 F.2d 1148, 1153 (5th Cir. 1981) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

"It is within the district court's discretion to deny a motion to amend if it is futile." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000) (citations omitted). The "futility" of amendments to a complaint is measured by whether "the amended complaint

---

[15] Plaintiff did not amend as a matter of course within the time periods allowed after service of the pleadings or after the service of Defendants' motion under Rule 12(b). *See* Fed. R. Civ. P. 15(a)(1).

would fail to state a claim upon which relief could be granted" under "the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id*. at 873 (citations omitted).

Contrary to Defendants' arguments, Plaintiff has not demonstrated any undue delay, bad faith, or dilatory motive in seeking the instant amendments. Plaintiff has made no previous attempts to cure the deficiencies in her pleadings. While allowing amendment would cause Defendants some prejudice, given that they would have to reassert their dispositive motion to address the new claims, such prejudice would not be undue prejudice. The Court does agree with Defendants, however, that the proposed amendments are futile. As discussed below, Plaintiff's Motion to Amend is subject to denial on that basis.

### 2.    Proposed Claims Under 42 U.S.C. § 1983

Proposed Counts III, IV, and V all seek relief under the U.S. Constitution though 42 U.S.C. § 1983. (R. Doc. 7 at 39-40). Proposed Count III seeks relief for alleged violation of the Supremacy Clause. Proposed Count IV seeks relief for alleged violations of the rights to privacy, parental rights, and right to bodily autonomy under the Fourteenth Amendment of the U.S. Constitution. Proposed Count V seeks relief for alleged violations of due process as guaranteed under the Fifth and Fourteenth Amendments of the U.S. Constitution. [16]

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, custom, or usage . . ., subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and [federal] laws, shall be liable to the party injured." 42 U.S.C. § 1983. To state a claim under section 1983, "a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United

---

[16] The Due Process Clause of the Fifth Amendment is inapplicable in this action, as it applies to the federal government. *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'").

States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Lauderdale v. Texas Dep't of Criminal Justice*, 512 F.3d 157, 165 (5th Cir. 2007) (internal quotation marks and citation omitted).

The Supremacy Clause provides that federal law "shall be the supreme Law of the Land." U.S. Const. art. VI, cl. 2.

The Due Process Clause of the Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The U.S. Supreme Court has interpreted the Due Process Clause as containing guarantees of both "procedural" and "substantive" due process. *Reno v. Flores*, 507 U.S. 292, 301-02 (1993) (citing cases).

In denying the Motion for Temporary Restraining Order in the related challenge to the mask mandate, the district judge held that Plaintiff failed to meet her burden of establishing a procedural or substantive due process claim under the Fourteenth Amendment. *Miranda*, 2021 WL 4352328, at *4 (M.D. La. Sept. 24, 2021). Having reviewed Plaintiff's pleadings, and the arguments of the parties, the Court now similarly concludes that Plaintiff has failed to state a claim under 42 U.S.C. § 1983.

### i.    The Supremacy Clause

Plaintiff's claims under the Supremacy Clause of the U.S. Constitution are actually attempts to reallege Plaintiff's claims under the federal EUA statute, 21 U.S.C. 360bbb-3. As discussed above, Plaintiff has no right of action under this statute (or regulations promulgated under the statute). *See* 21 U.S.C. § 337(a). The "Supremacy Clause, of its own force, does not

create rights enforceable under § 1983." *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 107 (1989); *see Lloyd*, 2021 WL 5353879, at *5.

This proposed claim under the Supremacy Clause is futile.

### ii.    Procedural Due Process

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "In order to establish a procedural due process claim, a plaintiff must show that (1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of the property interest." *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006).

It is unclear whether Plaintiff is seeking to allege a claim for violation of procedural due process. Plaintiff does not raise any specific claim that her minor child was not provided notice or meaningful opportunity to be heard prior to the issuance of the mask mandate. Even if Plaintiff raised such a claim, the Court notes that "[p]rotection of the health and safety of the public is a paramount governmental interest which justifies summary administrative action." *Hodel v. Virginia Surface Min. & Reclamation Ass'n, Inc.*, 452 U.S. 264, 300 (1981).

Moreover, the mask mandate does not violate the  minor child's "property right" in a public education. The U.S. Supreme Court has recognized that students have a procedural due process "property right" to a public education. *Goss v. Lopez*, 419 U.S. 565, 579 (1975). Plaintiff does not allege, however, that her minor child was actually denied the right to attend school and receive a public education. Instead, Plaintiff alleges that her child was denied a right to public education absent certain health precautions – like a mask mandate – instituted during a global

pandemic. *See B.P. by & through L.P. v. N. Allegheny Sch. Dist.*, No. 21-1112, 2022 WL 114075, at *5 (W.D. Pa. Jan. 12, 2022) (plaintiff failed to show a constitutionally protected property interest "for a public education in a safe and healthy environment" with respect to a procedural due process claim challenging the lifting of a mask mandate); *Gunter v. N. Wasco Cty. Sch. Dist. Bd. of Educ.*, No. 21-1661, 2021 WL 6063672, at *11 (D. Or. Dec. 22, 2021) ("Plaintiffs fail to show that they have a constitutionally-protected interest in being allowed to refuse to let their children wear masks while at school."); *P.M. v. Mayfield City School District Board of Education*, No. 21-1711, 2021 WL 4148719, at *3 (N.D. Ohio Sept. 13, 2021) ("[T]he Court neither sees where Plaintiff has been denied a life, liberty, property, or fundamental right; nor how wearing a mask impedes her children's property interest in school attendance.").

In short, to the extent Plaintiff seeks to allege a proposed claim for procedural due process, that proposed claim is futile because Plaintiff's minor child's property rights in attending public school have not been violated based on the allegations in the pleadings.

### iii.    Substantive Due Process

Plaintiff's proposed claims with respect to substantive due process are grounded on the alleged violation of the minor child's alleged fundamental "right to attend school without being forced to wear potentially harmful medical devices of their noses and mouths." (R. Doc. 22-3 at 41).[17] Plaintiff also raises substantive due process claims based on her fundamental right "to make decisions concerning the custody, control, and care" of E.R. and based on E.R.'s fundamental right to "personal autonomy, bodily integrity and rights to reject medical treatment." (R. Doc. 22-3 at 39-40).

---

[17] Plaintiff further proposes to allege that her child's fundamental "right to be free from forced medical experimentation" has been violated. (R. Doc. 22-3 at 41). The proposed facts do not support any allegation that any "forced medical experimentation" was conducted on Plaintiff's minor child. This proposed claim is meritless.

Substantive due process under the Due Process Clause "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). Where a fundamental right is implicated, the Court will apply "strict scrutiny," meaning that the law will not be upheld unless the government demonstrates that the law is necessary to further a compelling governmental interest and has been narrowly tailored to achieve that interest. *Reno v. Flores*, 507 U.S. 292, 302, 113 (1993). If a right is not fundamental, however, then the Court will apply a "rational basis" review, which will deem the law constitutional unless the plaintiff can demonstrate that it is not reasonably related to a rational government interest. *See Harris v. Hahn*, 827 F.3d 359, 365 (5th Cir. 2016) (citation omitted).

Foremost, Plaintiff seeks to raise an individual claim under the Fourteenth Amendment. The U.S. Supreme Court has recognized that parents have a fundamental interest "in the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (statute requiring parents to provide for the visitation of grandparents violated the Fourteenth Amendment). Plaintiff has not directed the Court, however, to a single decision expanding this fundamental right "to encompass a right for parents to opt their children out of mask mandates." *Lloyd*, 2021 WL 5353879, at *9 (refusing to expand substantive due process to encompass such a right). The mask mandate does not interfere with Plaintiff's fundamental right "in the care, custody, and control" of her minor child, as it does not compel Plaintiff to enroll her child in an Ascension Parish public school. *See Pierce v. Society of Sisters*, 268 U.S. 510, 534-35 (1925) (holding that a statute requiring the attendance of public schools violated the Fourteenth Amendment). No fundamental parental right "in the care, custody, and control" of minor children is implicated.

31

Plaintiff also seeks to allege claims with respect to E.R.'s right to privacy and right to bodily integrity. Plaintiff does not provide any specific allegations with respect to the asserted "right to privacy" other than including this allegation in the conclusory heading to Count IV. This allegation does not merit further discussion. The U.S. Supreme Court has held, however, that "a competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment" under the Fourteenth Amendment. *Cruzan by Cruzan v. Dir., Missouri Dep't of Health*, 497 U.S. 261, 278 (1990). But courts have concluded that mask mandates do not qualify as "compulsory bodily intrusion" or as "medical treatment" and, "therefore, do not implicate the right to bodily autonomy under the Fourteenth Amendment." *Lloyd*, 2021 WL 5353879, at *10 (citing *Zinman v. Nova Se. Univ., Inc.*, No. 21-60723, 2021 WL 4025722, at *17 (S.D. Fla. Aug. 30, 2021), *report and recommendation adopted sub nom. Zinman v. Nova Se. Univ.*, 2021 WL 4226028 (S.D. Fla. Sept. 15, 2021) ("Wearing a mask on the outer surface of one's face to cover one's nose and mouth does not 'intrude' within one's body; it certainly is significantly different in kind and degree from the circumstances at issue in the cases upon which Plaintiff generally relies.")). No fundamental right to bodily autonomy recognized by the Fourth Amendment is implicated

Plaintiff also seeks to allege claims with respect to E.R.'s right to public education. The U.S. Supreme Court has held that the right to public education is not a "fundamental right" for the purposes of substantive due process. *See San Antonio Independent Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35 (1973) (noting that education is not a fundamental right within the Constitution); *see also Kadrmas v. Dickinson Pub. Sch.*, 487 U.S. 450, 458 (1988) ("Nor have we accepted the proposition that education is a 'fundamental right,' . . . which should trigger strict scrutiny when government interferes with an individual's access to it."). Furthermore, several Courts have held,

in response to public health measures raised in response to the instant global pandemic, that there is no fundamental constitutional right to not wear a mask. *Klaassen v. Trustees of Indiana Univ.*, 2021 WL 3073926, at *38 (N.D. Ind. July 18, 2021), *vacated and remanded with instructions to dismiss as moot*, *Klaassen v. Trustees of Indiana Univ.*, No. 21-2326, 2022 WL 213329 (7th Cir. Jan. 25, 2022); *Whitfield v. Cuyahoga Cnty. Pub. Library Found.*, No. 21-31, 2021 WL 1964360, at *2 (N.D. Ohio May 17, 2021) ("[T]here is no general constitutional right to wear, or to refuse to wear a face mask in public places."); *United States v. Berglund*, No. 21-cr-31, 2021 WL 1589548 (D. Minn. Apr. 23, 2021) ("Courts have repeatedly found that requiring participants at trial to wear face masks due to the COVID-19 pandemic does not violate a criminal defendant's constitutional rights."); *see also Cangelosi v. Sheng*, No. 20-1989, 2020 WL 5960682, at *2-3 (E.D. La. Oct. 8, 2020) (plaintiff failed to show how mask order violates any right to privacy or freedom of expression).

"Because students do not possess a fundamental right to attend school without wearing a mask or other face covering, the Plaintiffs' substantive due process claim is governed by the rational basis test." *Oberheim v. Bason*, No. 21-01566, 2021 WL 4478333, at *8 (M.D. Pa. Sept. 30, 2021); *see Stepien v. Murphy*, No. 21-13271, 2021 WL 5822987, at *5 (D.N.J. Dec. 7, 2021) ("Because the mask mandate does not target a suspect class or burden a fundamental right, it receives not strict scrutiny but rational-basis review."); *W.S. by Sonderman v. Ragsdale*, 2021 WL 2024687, at *2 (N.D. Ga. May 12, 2021) ("Rational basis is the proper standard of review for the mask mandate. The mandate neither discriminates against a protected class nor infringes a fundamental right.").

Under rational basis review, the mask mandate is "accorded a strong presumption of validity." *Heller v. Doe by Doe*, 509 U.S. 312, 319 (1993). The mask mandate is constitutional if

it (1) promotes a "legitimate governmental purpose" and (2) there is a "rational relationship between" that purpose and the means chosen by the government. *Id.* at 320. The second prong does not require the chosen means to promote the government's purpose "with mathematical nicety." *Id.* (internal quotation marks omitted). "Where there are plausible reasons for [the government's] action, [the] inquiry is at an end." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313-14 (1993). "It is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the [government]." *Beach Commc'ns*, 508 U.S. at 315.

Here, the mask mandate satisfies both prongs of the rational basis test. The government has a compelling interest to protect the public from the spread of COVID-19 during the ongoing pandemic. *Denver Bible Church*, 494 F. Supp. 3d at 828. The mask mandate is a rational measure designed to accomplish that goal in the context of public schools. *See Oakes v. Collier Cty.*, No. 20-568, 2021 WL 268387, at *3 (M.D. Fla. Jan. 27, 2021) ("It would be difficult to contend with a straight face that a mask requirement does not bear a rational relation to protecting people's health and preventing the spread of COVID-19."); *see also Denis v. Ige*, 538 F. Supp. 3d 1063, 1076-78 (D. Haw. 2021) (mask mandate survives rational basis scrutiny). The district judge has already found that wearing a mask in public places serves the "state's interest in preventing the spread of COVID-19 and protecting individuals' health is substantial." *Miranda*, 2021 WL 4352328, at *6 (citing *Roman Catholic Diocese* 141 S. Ct. 63, 67 ("Stemming the spread of COVID-19 is unquestionably a compelling interest.")). "Indeed, at this point in the pandemic, a nearly unanimous consensus of the public health community recommends the use of masks as a means of reducing the spread of the virus and protecting the mask wearer from it." *Miranda*, 2021 WL 4352328, at *6 (citation omitted).

Plaintiff's proposed substantive due process claims are futile because no fundamental rights are implicated and the mask mandate survives rational basis review.

### 3.    Proposed Claims Under the ADA and Rehabilitation Act

Where a plaintiff raises claims under the ADA or Rehabilitation Act in the context of seeking redress for a school's failure to provide a [free appropriate public education]," the exhaustion requirement of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(*l*), is implicated even if the complaint is "not phrased or framed in precisely that way." *E.T. v. Paxton*, 19 F.4th 760, 767 (5th Cir. 2021) (quoting *Fry v. Napoleon Cmty. Schs.*, --- U.S. ---, 137 S. Ct. 743, 755, (2017)); *see also Hayes v. DeSantis*, No. 21-22863, 2021 WL 4236698, at *6 (S.D. Fla. Sept. 15, 2021) ("Where claims arising under the ADA and Rehabilitation Act are asserted in the context of public education, the question of whether administrative exhaustion requirement under the IDEA is implicated.") (citing 20 U.S.C. § 1401(3)(A)(i)). "The IDEA offers federal funds to States in exchange for a commitment: to furnish a 'free appropriate public education'—more concisely known as a FAPE—to all children with certain physical or intellectual disabilities." *Fry*, 137 S. Ct. at 748 (citing 20 U.S.C. § 1401(3)(A)(i)). IDEA requires that "before the filing of a civil action under [the ADA and the Rehabilitation Act] seeking relief that is also available under this subchapter, [administrative] procedures . . . shall be exhausted[.]" 20 U.S.C. § 1415(*l*). To determine if IDEA applies, courts generally must answer two questions: 'First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school . . .  [a]nd second, could an adult at the school—say, an employee or visitor—have pressed essentially the same grievance?'" *E.T.*, 19 F.4th at 767 (quoting Fry, 137 S. Ct. at 756). "If both questions can be answered in the negative, IDEA and its administrative exhaustion requirements apply." *Id.*

35

Here, Plaintiff specifically argues that the mask mandate denies E.R. an "equal opportunity" to participate in or benefit from services, programs, or activities at his school because "[r]eferring students into a separate classroom or remote learning" violates the requirement that public schools must "administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." (R. Doc. 22-3 at 33-35 (quoting 28 C.F.R. 35.130(d)). Plaintiff's claims under the Rehabilitation Act similarly assert that E.R. has been denied "free appropriate public education" in light of his disability. (R. Doc. 22-3 at 36) (citing 34 C.F.R. § 104.33). Under these circumstances, the exhaustion requirements of the IDEA are implicated and must be satisfied. First, the allegations with respect to in-person learning with peer groups pertains solely to public schools, not other public facilities in general. *E.T.*, 19 F. 4th at 767.  Second, "a non-student adult at the school could obviously not press the same grievance because he or she would not be at the school to access in-person learning." *Id.*

Given the foregoing, it appears that IDEA applies and that Plaintiff's claims, as alleged, would be futile because she has not alleged exhaustion of administrative remedies or otherwise indicated that any such exhaustion occurred. *See M.L. v. Frisco Indep. Sch. Dist.*, 451 F. App'x 424, 428 (5th Cir. 2011) ("The IDEA requires administrative exhaustion prior to instituting an action in federal court."); *see also Hernandez v. Grisham*, 508 F. Supp. 3d 893, 974 (D.N.M. 2020) ("The Plaintiffs' proposed amendment, however, would be futile, because Williams has not exhausted his administrative remedies under the IDEA."). But even if Plaintiff's claims were not meritless and futile, given that Plaintiff seeks to allege that E.R. has withdrawn from public school, Plaintiff's proposed claims under the ADA and Rehabilitation Act (which appear to be properly characterized as IDEA claims) are moot. *See Van Alstyne Indep. Sch. Dist. v. Andre S.*,

No. 09-89, 2010 WL 715560, at *6 (E.D. Tex. Feb. 23, 2010) (the IDEA claims of a disabled student's parents against a school district were moot after the student withdrew from the school).

## III.    Conclusion

Based on the foregoing,

**IT IS RECOMMENDED** that Plaintiff's Motion to Change Status from Pro Se to Sui Juris and Affidavit (R. Doc. 18) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that Defendants' Motion to Dismiss, Motion to Strike, and Motion for Attorney's Fees (R. Doc. 14) be **GRANTED IN PART and DENIED IN PART**, and Plaintiff's federal claims be **DISMISSED WITH PREJUDICE**, and Plaintiff's state claims be **DISMISSED WITHOUT PREJUDICE.**

**IT IS FURTHER RECOMMENDED** that Plaintiff's Motion to Dismiss (R. Doc. 20) be **DENIED.**

**IT IS FURTHER RECOMMENDED** that Plaintiff's Motion to Join and Add Parties Defendant (R. Doc. 13) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that Plaintiff's Motion for Leave to File Amended Complaint for Declaratory Relief and Other Equitable Relief (R. Doc. 22) be **DENIED.**

Signed in Baton Rouge, Louisiana, on February 24, 2022.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**